**STATE of Maine**

v.

**Robert DAFOE.**

**Robert DAFOE**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued June 15, 1983.

Decided Aug. 4, 1983.

Charles K. Leadbetter, Asst. Atty. Gen. (orally), Augusta, for plaintiff.

Andrews B. Campbell (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, and WATHEN, JJ.

ROBERTS, Justice.

Robert Dafoe appeals from four judgments—all entered in the Superior Court, Washington County. The defendant directly appeals two unrelated criminal convictions consolidated, for purposes of this proceeding, with two concomitant post-conviction appeals. Dafoe was convicted, following a guilty plea, of operating under the influence (OUI), 29 M.R.S.A. § 1312 (Supp. 1980–1981) and fined $250. The fine was stayed pending appeal. Subsequently, Dafoe was convicted, following a jury trial, of criminal mischief, Class D, 17–A M.R.S.A. § 806(1)(A) (1983), and sentenced to ninety days in jail with all but thirty days suspended, restitution of $265.43, and probation. The defendant has served the thirty-day portion of the sentence, but he maintains that restitution and probation were stayed pending appeal.

On his direct appeals, Dafoe raises only one discernible issue, relating to the trial court's failure to advise him of his right to appeal the criminal mischief conviction. With respect to the post-conviction review of the OUI conviction, the only issue on appeal which merits our consideration is whether Dafoe's guilty plea was knowing and voluntary. With respect to the post-conviction review of the criminal mischief conviction, Dafoe raises several issues on appeal which relate to alleged ineffective assistance of trial counsel. We will discuss in this opinion only the following: (1) whether trial counsel erred in failing to call Dafoe's wife as a witness; (2) whether trial counsel erred with respect to the State's primary witness, Herman Seavey; (3) whether trial counsel failed to preserve an adequate record for appeal by failing to move for a judgment of acquittal; and (4) whether trial counsel failed to keep Dafoe informed. Because we find no merit in Dafoe's contentions, we affirm the judgments.

I.

Dafoe was charged by complaint in the District Court, Machias, for operating under the influence in September of 1980 in Jonesport. At arraignment Dafoe pleaded not guilty and the case was transferred to the Superior Court. In an unrelated complaint, dated October 20, 1980, Dafoe was charged, in the District Court, Machias, with criminal mischief. The complaint alleged that Dafoe intentionally or knowingly damaged the windshield of the Town of Jonesport police cruiser in the amount of $265.43. Following a trial in November of 1980, at which Dafoe appeared without assistance of counsel, the District Court entered a judgment of guilty and sentenced Dafoe to sixty days in the Washington County Jail, all suspended, and one year probation on condition of full restitution within six months. Dafoe appealed to the Superior Court.

On November 20, 1980, Dafoe appeared in the Superior Court for the appointment of

counsel in both cases.[1] Both cases were first scheduled for trial on January 9, 1981 and then rescheduled for the criminal session commencing March 5, 1981.[2] On March 5, both cases were called and scheduled for trial by jury.

When the OUI case was called on March 5, defense counsel claimed that he had a pending "written" request for discovery that had not been acted upon. In response, the district attorney claimed the police department would not cooperate. The Superior Court cautioned the State of a possible dismissal for noncompliance with the discovery rules. The OUI record contains a motion for discovery and a motion to dismiss, both dated March 6, 1981 and bearing docket numbers for both cases. The motions were entered March 9, 1981 on both dockets. Following a hearing on March 13, 1981, the motion to dismiss was "denied" because defense counsel had received some discovery that morning, and the motion for discovery was continued until defense counsel completed examining the discovery materials.

Thereafter, on March 23, 1981, defense counsel filed a motion for discovery pursuant to M.R.Crim.P. 16(c)(1)(C), marked with the OUI docket number, entered on the OUI docket, and placed in the OUI file. The motion requested information concerning the criminal record of Herman Seavey, Jr.—the State's alleged "eye-witness" in the *criminal mischief* case. On April 7, 1981,

the motion for discovery was scheduled to be heard on May 8, 1981. At the same time, both cases were scheduled for trial during the criminal session commencing May 15, 1981.

On May 8, 1981, following a hearing, the Superior Court, based on trial counsel's representations, dismissed the motion for discovery "as complied with." Both cases were called on May 15, 1981, but continued because defense counsel was ill. Thereafter, on June 5, August 5, and October 6, 1981, the two cases were scheduled and then rescheduled for separate trials in June, September, and November of 1981.

The OUI case was finally scheduled for trial the week of November 16, 1981. Upon that appearance, Dafoe changed his plea from not guilty to guilty and the Superior Court entered a judgment of conviction. Evidently as a result of a "plea bargain," the Superior Court accepted the State's recommendation of $250 fine and gave Dafoe thirty days to pay.

Dafoe appeared in the Superior Court with counsel on December 2, 1981 to begin a jury trial on the criminal mischief charge. The State presented two witnesses—Officer Dow and Herman Seavey, Jr., the alleged eyewitness. Defense counsel vigorously cross-examined both witnesses, but did not question Seavey with respect to any prior criminal convictions.[3] At the close of the

---

1. Although stemming from unrelated charges and docketed separately, the two cases followed identical procedure from appointment of counsel on November 20, 1980 until a trial scheduling of October 6, 1981. The two cases were not ordered consolidated in the Superior Court and were kept in two separate files. Nevertheless, it appears that defense counsel treated the cases as consolidated.

2. Counsel filed motions to continue in both cases on January 7, 1981. The motion asks for a continuance as a result of the State's failure to comply with a discovery request "forwarded" on December 10, 1980. (No written request dated December 10 appears in either record.) The docket entries made January 13, 1981 in both cases state: "Defendant's Motion to Continue Trial moot. Case not reached."

The criminal mischief case includes one additional docket entry on January 9, 1981 which states: "Matter called at the call of the criminal docket. Passed due to unavailability of counsel." Nevertheless, the motion transcript reveals that the *OUI* case was called and passed due to the unavailability of counsel.

3. In April of 1979 Seavey pleaded guilty to a charge of burglary (Class B) and was sentenced to one year suspended at the Maine Correctional Center, two years probation, and $700 restitution. Hence, Seavey was on probation until April of 1981. The post-conviction petition for the criminal mischief case implies, *inter alia,* that as a result of his probation Seavey was motivated to blame someone else for the damaged windshield. Combined with the fact that Seavey's testimony was crucial to the State's

State's case, trial counsel moved for a judgment of acquittal which was denied. Dafoe appeared as the only witness for the defense.

Upon a verdict of guilty, the Superior Court immediately entered a judgment of conviction and sentenced Dafoe to ninety days at the Washington County Jail, with all but thirty days suspended. Dafoe also received one year probation[4] and was ordered to pay restitution of $265.43 by March 15, 1982. He was not informed on the record of his right to appeal.

On December 15, 1981, Dafoe filed *pro se,* from the Hancock County Jail, a pleading dated December 11 which the Superior Court treated as a notice of appeal.[5] The two cases were entered on the Law Court docket on December 22, 1981. Subsequently, on July 30, 1982, Dafoe filed, in the Superior Court, two separate petitions for post-conviction review of the OUI and the criminal mischief convictions. As a result of the petitions, the direct appeals were ordered held in abeyance until January of 1983. Following a hearing, the Superior Court denied relief under both petitions. Dafoe filed a notice of appeal to the Law Court on December 7, 1982. On January 5, 1983, the Law Court granted a certificate of probable cause and consolidated the direct appeals with the post-conviction appeals.

## II.

### A. *The Direct Appeal*

■ Dafoe's counsel concedes that the defendant's only argument on direct appeal is the trial justice's failure to advise the defendant of his right to appeal the criminal mischief conviction. The defendant's brief, however, focused on trial counsel's failure to advise on the right to appeal—an issue of ineffective assistance of counsel normally inappropriate on direct appeal. *State v. Gilcott,* 420 A.2d 1238, 1240 (Me. 1980). Nevertheless, because he was subsequently permitted to perfect direct appeals in both cases, Dafoe was not prejudiced by either counsel's or the court's failure to advise him of the right to appeal. Consequently, we hold that any error in this respect was harmless.

### B. *The OUI Post-Conviction Petition*

The OUI post-conviction petition alleges ineffective assistance of counsel on two grounds. First, Dafoe alleges that the police officer who administered the breath test upon which the OUI charge was based, was not licensed or certified to administer the test. Dafoe claims: "This should have been brought out at trial, if there had been one." Second, Dafoe alleges that he did not knowingly plead guilty to the OUI charge, that trial counsel did not discuss the plea with him beforehand, that trial counsel instructed him to plead guilty, and that he did not want to plead guilty.

At the post-conviction hearing, trial counsel testified that he discussed the matter with the defendant at his office and that Dafoe, not counsel, suggested pleading guilty. Trial counsel's bill to the court tends to corroborate this testimony. Dafoe testified that he had no contact with trial

case, the petition alleges that it was ineffective assistance of counsel to fail to use the conviction to impeach Seavey's credibility. *See also infra* at 774–775.

4. The trial transcript suggests that the defendant received *two* years probation. Nevertheless, the docket entry and the judgment and conviction form both designate one year, the maximum period on a class D conviction. 17–A M.R.S.A. § 1202(1) (1983).

5. Consequently, on December 17, 1981, defense counsel filed a motion to withdraw as counsel in the Superior Court. The motion stated that the defendant had attempted to appeal the judgments *pro se,* although defense counsel had refused to do so because any appeal would be frivolous. Evidently, defense counsel had declined to move for a stay of sentence pending appeal for the same reasons.

Later, defense counsel also filed a motion to withdraw in the Law Court. New counsel was appointed in January of 1982 to prosecute the direct appeals. In addition, the subsequent post-conviction petitions were accompanied by a motion for appointment of counsel. Ultimately, Dafoe retained counsel to prosecute all four appeals.

counsel prior to his plea; that counsel's secretary phoned twice to advise him to "stand-by" for trial. Dafoe presented no testimony with respect to administration of the breath test.

■ The only issue we reach on appeal, with respect to the post-conviction review of the OUI charge, is whether the defendant's guilty plea was knowing and voluntary. After hearing testimony and reviewing the transcript of the proceeding at which the guilty plea was entered, the post-conviction justice concluded that the plea was knowing and voluntary. The court found that Dafoe reviewed the police report at his attorney's office and decided to plead guilty to the OUI charge. Given the additional evidence of a "plea-bargain," the Superior Court concluded that the plea was knowing and voluntary. Despite some conflicting testimony, we are satisfied that the post-conviction record contains evidence which supports the justice's conclusion. *See True v. State,* 457 A.2d 793, 795 (Me.1983). Neither the court's findings nor its conclusions with respect to the guilty plea were clearly erroneous. *See id.*

## C. *The Criminal Mischief Post-Conviction Review*

On appeal, we consider four issues raised in the defendant's brief with respect to alleged ineffective assistance of counsel in the criminal mischief case. Dafoe first argues that his defense counsel failed to interview Sandy Sue Dafoe and to call her as a witness. Dafoe's post-conviction petition states that Mrs. Dafoe would have testified that she was with Dafoe at the time the windshield was broken and that there was insufficient light near the cruiser for Seavey to have observed the crime. At the post-conviction hearing, trial counsel testified that he interviewed Sandy Sue Dafoe, but that she knew nothing and did not want to testify. Mrs. Dafoe's testimony did not directly rebut this claim, but she did claim knowledge of lighting conditions. The Superior Court found that trial counsel did speak with Mrs. Dafoe prior to trial and,

based on her representations at that interview, counsel determined that she had no knowledge of the incident. As a result, the court concluded that counsel's failure to call Sandy Sue Dafoe as a witness did not constitute ineffective assistance of counsel.

■ Upon a careful review of the record, we find that there is ample evidence to support the findings of the post-conviction justice. *See True,* 457 A.2d at 797. Even if Mrs. Dafoe in fact had knowledge of the lighting near the police cruiser, Mrs. Dafoe never claimed that she had any *direct* knowledge with respect to the broken windshield. Consequently, we hold that trial counsel's performance with respect to Sandy Sue Dafoe neither constituted "serious incompetency, inefficiency or inattention of counsel" falling below that of an ordinary fallible attorney, *Lang v. Murch,* 438 A.2d 914, 915 (Me.1981), nor "likely deprived the defendant of an otherwise available substantial ground of defense." *Id.*

Next we consider Dafoe's contention that trial counsel erred with respect to the State's primary witness, Herman Seavey. Dafoe's petition alleges that trial counsel failed to use Seavey's prior criminal conviction to impeach his credibility as a witness. At the post-conviction hearing, trial counsel testified that he learned of Seavey's conviction "approximately five minutes before . . . trial." As a result, counsel stopped the trial judge in the hall as the judge was entering the courtroom and requested a continuance. The judge became angry and refused to "hear anything about it." This request for a continuance does not appear in the trial record. Counsel's testimony contrasts sharply with his attempts to discover Seavey's criminal record in April and May of 1981. Not only did counsel tell the court in May of 1981 that the State had complied with discovery, but presumably trial counsel could have easily obtained a copy of Seavey's conviction papers from the court clerk in Washington County. In any event, trial counsel testified that he deliberately chose not to cross-examine on Seav-

ey's conviction as a tactical matter. He also claimed that he had sought continuances only "to prolong the time before trial," and not necessarily to obtain Seavey's record. The Superior Court found that, as a result of "informed, professional deliberation," trial counsel made a tactical decision not to cross-examine Seavey on the conviction and concluded that counsel's failure to cross-examine did not constitute ineffective assistance of counsel.

 We are not persuaded that either the Superior Court's finding or conclusion is clearly erroneous. *True,* 457 A.2d at 795. Trial counsel's failure to use Seavey's prior conviction for impeachment merits deference as a tactical decision. *Id.* at 796. In our view, however, the record before us does reveal that trial counsel's failure to be prepared with respect to Seavey was below the standard required of an ordinary fallible attorney, *see Lang,* 438 A.2d at 915, and is not excused by the conduct of the prosecutor. Nevertheless, we are satisfied that trial counsel's failure to use Seavey's conviction on cross-examination for impeachment purposes neither prejudiced Dafoe's case, nor deprived Dafoe of a substantial defense. *True,* 457 A.2d 793; *Lang,* 438 A.2d 914.

Finally, we find no harm either in trial counsel's failure to move for a judgment of acquittal at the end of trial or in his alleged failure to keep Dafoe informed. We have stated that the failure to move for acquittal or for a new trial at the close of all the evidence is not incompetence *per se. Cf. State v. Van Sickle,* 434 A.2d 31, 35 (Me.1981) (standard of review for sufficiency of evidence not changed by failure to move for new trial or acquittal provided issue is raised by proper and adequate designation in points of appeal and record is sufficient to decide question) (citing *State v. Morton,* 290 A.2d 371, 373 n. 2 (Me.1972)). In addition, Dafoe supports his claim that trial counsel failed in his duty to keep Dafoe informed only by a quotation from the *American Bar Association Standards Relating to the Administration of Criminal Jus-*

*tice* and a reference to conflicting testimony on the amount of consultation. Even if counsel's conduct was deficient in this regard, Dafoe has failed to demonstrate any prejudice.

We find no merit in any of Dafoe's other contentions. In conclusion, therefore, we agree with the post-conviction justice's finding that Dafoe is not entitled to relief under either post-conviction petition. Moreover, Dafoe's direct appeals have no merit.

Accordingly, the entries in each case are:

In LAW 81–498 Judgment of conviction in both CR 80–149 and CR 80–166 affirmed.

In WAS 82–445 Post-conviction judgment in both CR 82–93 and CR 82–94 affirmed.

All concurring.