Real LEVESQUE

v.

STATE of Maine.

Supreme Judicial Court of Maine.

Argued March 29, 1995.

Decided Sept. 14, 1995.

---

Richard K. Dubois (orally), Dubois & Chandler, Madawaska, for plaintiff.

Andrew Ketterer, Attorney General, Nancy Torresen (orally), Charles K. Leadbetter, Assistant Attorneys General, August, for the State.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

The State appeals from a judgment entered in the Superior Court (Aroostook County, *Marsano, J.*) granting post-conviction relief to the petitioner, Real Levesque, on the basis of ineffective assistance of counsel. Because we agree with the State's contention that, when evaluated pursuant to the proper standard of review, the evidence does not support a conclusion that Levesque met his post-conviction burden of demonstrating that the performance of his trial attorney constituted ineffective assistance of counsel, we vacate the judgment.

In 1992, following a jury trial, Levesque was convicted of gross sexual misconduct, 17–A M.R.S.A. § 253(1)(B) (1983) *repealed and replaced by* P.L.1989, ch. 401, § 4 (effective Sept. 30, 1989), gross sexual assault, 17–A M.R.S.A. § 253(2)(H) (Supp.1994), and unlawful sexual contact, 17–A M.R.S.A. § 255(1)(G) (Supp.1994). Although he filed a

notice of appeal, Levesque subsequently filed a written voluntary dismissal of his appeal. *See* M.R.Crim.P. 37(e)(1).

■ In 1993, pursuant to 15 M.R.S.A. §§ 2121–2132 and M.R.Crim.P. 68, Levesque filed a petition for post-conviction review. Following a testimonial hearing, the court granted Levesque's petition on the basis of ineffective assistance of counsel. In reaching that conclusion, the court focused on the opening statement of Levesque's trial attorney, the attorney's cross-examination of the victim, Levesque's daughter, and the attorney's failure to call Levesque's other daughter, Kelly, as a defense witness. We review for clearly erroneous findings of fact and errors of law. *Lagassee v. State*, 655 A.2d 328, 329 (Me.1995).

■ In evaluating claims of ineffective assistance of counsel, we employ a "reasonably competent assistance" standard. *Id.* 655 A.2d at 329. The post-conviction petitioner who alleges ineffective assistance of his trial counsel must demonstrate (1) that the trial attorney's performance is substandard, i.e., that "the attorney's performance falls measurably below the performance that might be expected of an ordinary, fallible attorney," and (2) that the substandard performance deprived the petitioner of an otherwise available substantial ground of defense. *Twist v. State*, 617 A.2d 548, 550 (Me.1992).

■ Caution must be used in evaluating the performance of the trial attorney so that "results based solely on hindsight" are avoided. *Lagassee*, 655 A.2d at 330; *Twist*, 617 A.2d at 550. Deference to strategic or tactical decisions of the trial attorney is substantially heightened, *True v. State*, 457 A.2d 793, 796 (Me.1983); these decisions are reviewable only for "manifest unreasonableness." *Twist*, 617 A.2d at 550.

■ Although Levesque did not contest the adequacy of the opening statement, the court concluded that it was too brief and not "an aggressive statement on behalf" of Levesque. In his opening statement, made at the close of the State's case, Levesque's attorney emphasized that the State must prove the elements of the crime beyond a reasonable doubt, pointed to the absence of direct physical evidence in the State's case, and contended that the real issue for the jury to decide was the credibility of the witnesses. Reviewed pursuant to the substantially heightened deferential standard, the opening statement was not measurably below the performance expected of an ordinary, fallible attorney. In fact, the nature and use of opening statements varies so widely depending on the lawyer's style that the failure to make *any* opening statement has been held not to constitute ineffective assistance of counsel. *Commonwealth v. Cohen*, 412 Mass. 375, 589 N.E.2d 289, 299 (1992).

■ The court further concluded that the cross-examination of the complaining witness was not strong and convincing, and failed to adequately impeach her. Central to the court's determination was the failure by Levesque's attorney to impeach the victim with a letter that the victim had written to a Department of Human Services social worker concerning her father's sexual conduct. The letter contains inconsistencies with the victim's testimony, especially as to when the sexual abuse occurred, but it also specifically refers to sexual acts, including sexual intercourse, that Levesque denied happened at all.[1] Had the letter been used to impeach the victim, its entire contents would have become admissible. The judgment of Levesque's trial attorney that the letter did more to corroborate the victim's testimony than to impeach it was not manifestly unreasonable. *Twist*, 617 A.2d at 550.

1. The letter stated in its entirety:
   The last time I can totally remember my father actually having sexual intercourse it would've been in more like the middle of October. I tried remembering if he did do it is [sic] in November. As far as I can remember, I'm positive he didn't have sexual intercourse at least I don't remember him doing it. I'm positive though that in November and December, he would rub my breasts and my vagina over and under the clothes. When he touched under I had a nightgown on. I remember him sucking on my breasts in November till [sic] the middle of December (before X-mas). I have thought really hard on the months and the things he did on/in those months and this is what I remember.

■ The court relied most heavily on the failure of Levesque's attorney to call the victim's sister, Kelly, as a defense witness. Much of Kelly's testimony that could be viewed as beneficial to the defense and damaging to the State's case would most probably not have been admissible.[2] Nor was the positive impact of her testimony assured; aspects of the testimony that Kelly was ready to give would have opened the door to other evidence damaging to Levesque. For example, although Kelly could have testified about her father's good character, i.e., that he stopped drinking and was a good father, that testimony would have opened the door to evidence that Levesque had a problem with alcohol and had physically beaten Kelly. If Kelly were to have testified that Levesque never sexually molested her, the State would have been able to impeach Kelly with a statement she made to the victim that Levesque had sexually molested her. Levesque's attorney was legitimately concerned about not introducing evidence of Levesque's bad conduct beyond the sexual conduct with the victim.

> A trial counsel is faced with many decisions as to strategy which arise during trial. The evaluation of the probable effect upon the jury of expected testimony of proposed witnesses, the conclusion as to whether their appearance can be expected to benefit or injure his client's case and the decision whether or not to call them to testify must necessarily be matters for the trained professional judgment of the attorney.

*Pierce v. State*, 463 A.2d 756, 760 (citations omitted). The tactical decision not to call Kelly as a witness was not manifestly unreasonable.

The court, although articulating the proper post-conviction standard of review, did not evaluate the performance of Levesque's attorney using this substantially heightened deferential standard. The resultant finding of ineffective assistance of counsel was im-

permissibly based on hindsight. *Twist*, 617 A.2d at 550. Although the court correctly observed that the performance of Levesque's attorney could have been better, the record does not support its conclusion that his performance was below that expected of an ordinary, fallible attorney.

■ The court further concluded that Levesque was deprived of an otherwise available substantial ground of defense. *State v. Jurek*, 594 A.2d 553, 555 (Me.1991). We recently upheld a court's conclusion of ineffective assistance of counsel. *Lagassee*, 655 A.2d at 329–30. *Lagassee*, however, did not involve a tactical decision of the trial attorney, but rather a serious failure to investigate and discover objective, compelling, and completely exculpatory evidence directly impeaching the victim's testimony. *Id.* Unlike *Lagassee*, the evidence presented by the State against Levesque was substantial and overwhelming. The victim described specific sexual acts committed against her over a long period of time. Her testimony was corroborated by medical evidence indicating a markedly enlarged hymenal opening consistent with multiple penetrations. The State presented evidence that Levesque made admissions to a detective that he had improperly touched the victim's breast and vaginal areas (contradicting his trial testimony), and that Levesque's wife had stated to a law enforcement officer that Levesque admitted the accusations were true and had threatened to kill himself. The court's determination that Levesque was deprived of an otherwise available defense was clear error.

The entry is:

Judgment vacated. Remanded for entry of a judgment denying the petition.

WATHEN, C.J., and ROBERTS, GLASSMAN and LIPEZ, JJ., concurring.

2. Kelly's testimony about prior incidents when the victim lied or demanded attention, that friends of the victim had been removed from their homes because of abuse, and that Levesque did not molest Kelly, her testimony as to the victim's character, and Kelly's opinion that the victim was making up the allegations, may not have been admissible. *See Pierce v. State*, 463 A.2d 756, 760 (Me.1983) (pursuant to M.R.Evid. 701, witness may be precluded from offering opinion testimony that the victim fabricated her story); M.R.Evid. 608(b).

DANA, Justice, with whom RUDMAN, Justice, joins, dissenting.

I respectfully dissent. Research has not produced a single case within the last thirty years in which we have affirmed a Superior Court finding of ineffective "trial" counsel and only once during that period have we affirmed a finding of ineffective trial preparation. The reason for this almost unblemished record is the amount of ineffectiveness that we find acceptable. I do not quarrel with the words—"ordinary, fallible attorney"—what needs to be elevated, in my view, is our assessment of that attorney.

Hearsay and contested admissions aside, the only real issue at trial was whether the jury would believe the defendant or his accuser. Trial counsel never attempted to impeach his client's accuser or offer the conflicting testimony of her older sister. The Superior Court was in a position to observe the witnesses and made the requisite finding that counsel's performance was well below that of the ordinary Maine lawyer. We should, and I do, defer to the trial court. I would affirm and grant the defendant a new trial.