STATE OF MAINE                                        SUPERIOR COURT
KENNEBEC, ss.                                         CRIMINAL ACTION
                                                     Docket No. CR-08-096
                                                      NM-KEN-9/20/2009

DENNY COLLYER,

v.                                                   ORDER ON PETITION
                                                     FOR POST-CONVICTION
STATE OF MAINE,                                      REVIEW

        Defendant

        By indictment dated 12/8/05, the petitioner was charged with two counts of

unlawful sexual contact, class C, alleged to have occurred between 7/1/01 and 8/23/03

with Anthony Laliberte named as the alleged victim in both counts.  The State called

five witnesses in its case-in-chief and two in its rebuttal case.  The petitioner was the

sole witness called by the defense.  The petitioner was found guilty by a jury of both

counts in June 2006.

        On 8/30/06, trial counsel was permitted to withdraw his representation of the

petitioner and successor attorneys were appointed.  On 2/5/07, the petitioner was

sentenced to five years incarceration, all but three years suspended, and four years of

probation on count I and two years incarceration, all suspended, and four years of

probation on count II, to be served consecutively to the sentence on count I.

        The petitioner alleges he received ineffective assistance of counsel at trial as

follows:

        1.    trial counsel failed to call Chad Croxford and Dr. Anthony Mancini as

witnesses at trial;

        2.    trial counsel failed to present inconsistent statements from Branda Laliberte

and Anthony Laliberte regarding sexual abuse by the petitioner;

3. trial counsel failed to present testimony about a statement from Sheryl Collyer;

4. trial counsel failed to challenge the investigating officer's questioning of the petitioner; and

5. trial counsel failed to request that the court excuse juror #38 from the jury.

The petitioner alleges he received ineffective assistance on appeal as follows:

1. appellate counsel did not focus on inconsistencies that challenged the credibility of witnesses; and

2. appellate counsel did not adequately present the issue of exclusion of juror #38.

For the following reasons, the petition is granted in part and denied in part.

## FINDINGS

### Trial

The petitioner lived with and eventually married Sheryl Collyer. She had two children, Branda and the alleged victim, Anthony Laliberte, born 8/24/92. All lived together in Augusta.

The report of Detective Boivin contains statements from Branda and Anthony Laliberte. (Pet. Ex. 3.) Some of these statements are inconsistent and contradict testimony at trial. The report also contains statements from Branda Laliberte regarding alleged sexual abuse of her by the petitioner. He was not charged with sexual abuse of Branda Laliberte. Trial counsel did inquire on cross-examination with regard to some of the inconsistent statements. (Trial Tr. at 74-75, 93-94.)

The petitioner hired the trial counsel's law firm to represent him in his divorce and bankruptcy. After he was indicted for the unlawful sexual contact charges on 12/8/05, his divorce attorney at that firm suggested the petitioner hire trial counsel for

2

the criminal case. The petitioner and trial counsel appeared at the arraignment on 12/20/05 and the petitioner was released on unsecured bond. The petitioner was arrested in June 2006 for violation of conditions of release and subsequently held without bail until trial.

Throughout this representation, trial counsel had very limited contact with the petitioner. (Pet.'s Exs. 5, 7.) During the period between the arraignment and the Rule 11 proceeding, the petitioner met very briefly with trial counsel after the docket call in April 2006. Although trial counsel testified that he met with the petitioner five or six times at the law firm, those meetings are not reflected on trial counsel's time sheets. (Id.)

The attorney[1] who represented the petitioner in his divorce case met with the petitioner regarding the criminal case, even though the divorce attorney previously advised the petitioner to hire trial counsel because criminal law was "not her field." The divorce attorney strongly suggested that the petitioner plead guilty, even though the petitioner had not yet met with trial counsel to discuss the plea agreement. Both his divorce attorney and trial counsel told the petitioner he would "go to prison" if he did not plead.[2] This advice was given in spite of the devotion of very little time to the case, virtually no investigation of the case, and no interviews of witnesses.

After discussion with trial counsel for a few minutes at court, the petitioner entered a plea of guilty to both charges on 6/8/06. He felt he had no choice; he knew trial counsel did not know the case. The petitioner withdrew those pleas on 6/12/06. The case was scheduled for expedited jury selection on 6/19/06 because the petitioner was incarcerated.

---

[1] This attorney did not testify at the hearing on the petition for post-conviction review.
[2] The plea agreement included a six-month sentence to be served initially.

The petitioner asked both his divorce attorney and trial counsel to request a continuance of trial because he had had little contact with trial counsel. No motion was filed. Trial counsel testified that he told the petitioner that the court would not continue the case without a very good reason. If the court had been told that a continuance was needed because the case was not ready for trial and that the petitioner agreed to the continuance even though in custody, the case would have been continued.

The petitioner met with trial counsel at jury selection on 6/19/06 and for a short period of time on 6/23/06 at the jail. The petitioner met with his divorce attorney twice after he withdrew his pleas. That attorney discussed the police reports.

As a result of an accident in 1993, the petitioner injured his shoulder and could not lift his left arm and had little range of motion. He sought medical attention for the persistent pain and instability during 2002 from Dr. Anthony Mancini.[3] Toward the end of 2002, he underwent arthroscopic repair of the shoulder. He was given a sling and instructed to avoid use of his left arm through January 2003. His shoulder discomfort continued through 2004. (Pet.'s Ex. 1.)

After the alleged victim testified that the petitioner touched the alleged victim when he was sleeping on the top bunk, the petitioner told his trial counsel about the medical problems and the fact that he could not have reached up to the top bunk. Although trial counsel knew about the shoulder injury before trial, the petitioner had not told this particular theory to trial counsel before the trial because the petitioner never had the opportunity to discuss the case fully. Although trial counsel testified that he did not know before trial about the shoulder injury and the treatment by Dr. Anthony Mancini, he agreed that the petitioner could have told the divorce attorney.

---

[3] Dr. Mancini was subpoenaed to testify at the hearing on the petition for post-conviction review but failed to appear. The parties stipulated to the admission of the medical records. (Pet. Ex. 1.)

4

During the beginning of June 2006, the petitioner informed trial counsel about a phone call made by his then ex-wife, Sheryl Collyer, to Tammy White. During the call, Ms. Collyer stated that she was guilty of using the petitioner to get what she felt he owed her; she had been and was manipulating the petitioner to get as much as she could from him. The call was recorded by Ms. White. These statements were discussed at trial at sidebar. (Trial Tr. at 138-147.) The court ruled that trial counsel would be allowed to inquire regarding Ms. Collyer's statements but the State's attorney would then be allowed to place the statement in context; the State argued that the petitioner had told Ms. White that he was charged with abusing Ms. Collyer and not her child because Ms. White had children. Trial counsel declined to use the tape at trial.

Aaron "Chad" Croxford has known the petitioner for several years and spent a significant amount of time with him from 2001 to 2005, when Mr. Croxford rented an apartment in a home owned by the petitioner. Mr. Croxford observed the petitioner's interaction with his family members on many occasions. Mr. Croxford never observed any inappropriate conduct and never heard the children, Branda and Anthony, say that the petitioner had done anything inappropriate. Mr. Croxford also observed the petitioner wearing a sling after surgery.

The petitioner contacted Mr. Croxford from the jail and asked him to testify; Mr. Croxford agreed. His cell phone number was available to the petitioner and counsel, although Mr. Croxford could not return the petitioner's call at the jail. The petitioner also informed trial counsel during the 6/23 visit that Mr. Croxford was available to testify regarding family dynamics and use of alcohol at the petitioner's home. Mr. Croxford would have been prepared to testify at the petitioner's trial consistent with these observations. Mr. Croxford could not recall whether he was to contact the attorneys or they would contact him. In any event, trial counsel agreed he never

5

contacted Mr. Croxford. Although trial counsel testified that there was no benefit to calling Mr. Croxford, trial counsel did not explain why Mr. Croxford's testimony regarding his observations of the family interaction and the petitioner's relationship with the children would not have been beneficial.

During his testimony at trial, the petitioner took exception to Detective Boivin's method of questioning and to the accuracy of his report. (Trial Tr. at 263-64; 304-09.) A motion to suppress dated 12/20/05 was filed before trial but was withdrawn by counsel by letter filed 2/7/06.[4] Trial counsel did not raise the petitioner's concerns during the cross-examination of Detective Boivin. (Trial Tr. at 195-222.)

During the trial, the jury officer informed the court that juror #38 said that the person who rented the apartment from the petitioner was her brother's son, Chad Croxford. The court discussed this information with the juror in the presence of counsel. (Trial Tr. at 147-150.) The juror stated that her knowledge would not affect her ability to listen to the evidence and render a fair and impartial verdict. (Id. at 149.)

During the time period of trial counsel's representation of the petitioner, trial counsel was found to have violated the Maine Bar Rules by failing to communicate adequately with clients, neglecting cases, and failing to respond to court deadlines in three separate cases. By report dated 6/24/08, he received a public reprimand from the Board of Bar Overseers. (Pet. Ex. 2.)

Appeal

The petitioner never met in person his appellate attorney, who was not his trial counsel. The petitioner was incarcerated at Windham during the time period of his appeal. Appellate counsel and the petitioner had written and telephone

---

[4] The petitioner testified that he did not feel free to leave during the interview with Detective Boivin. (Trial Tr. at 307.)

6

communication. The petitioner first saw the brief on appeal after it was mailed to the Law Court.

Appellate counsel pursued an argument regarding the sufficiency of the evidence at the petitioner's request. Appellate counsel also focused on the court's failure to exclude juror #38. (Jt. Ex. 1.). Because Ms. Collyer's statements were not introduced at trial and because Mr. Croxford did not testify at trial, no argument was available to the appellate attorney with regard to those two issues.

CONCLUSIONS

I. Trial

For trial issues, the petitioner must demonstrate that there has been serious incompetency, inefficiency or inattention of counsel that falls below that which might be expected from an ordinary fallible attorney and that the ineffective representation by counsel has likely deprived the defendant of an otherwise available substantial ground of defense. See State v. Brewer, 1997 ME 177, ¶¶ 15-17, 699 A.2d 1139, 1143-44; see State v. Jurek, 594 A.2d 553, 555 (Me. 1991) ("Failure to prove resultant prejudice precludes relief regardless of the quality of counsel's performance."). "[T]he test is applied on a case-by-case basis, and evaluations of ineffective assistance of counsel claims are 'guided by the overall justness and fairness of the proceeding.'" McGowan v. State, 2006 ME 16, ¶ 12, 894 A.2d 493, 497 (quoting Aldus v. State, 2000 ME 47, ¶¶ 14-15, 748 A.2d 463, 468.

"Defense counsel owes a duty to the client to conduct a reasonable investigation." Lagassee v. State, 655 A.2d 328, 329 (Me. 1995). That duty includes a duty to interview witnesses who have information relevant to a case. See Doucette v. State, 463 A.2d 741, 745 (Me. 1983). In order to show prejudice, the petitioner must show that an allegedly

7

exculpatory witness was available for trial and the nature of the witness's testimony. Id. at 745-46.

Heightened deference is accorded in reviewing strategic or tactical decisions by trial counsel. See True v. State, 457 A.2d 793, 796 (Me. 1983). The question is whether the strategy has been shown to be "manifestly unreasonable." Id.

### 1. Failure to Call Witnesses

Trial counsel's failure to make any reasonable investigation of the case and the failure to interview Mr. Croxford and Dr. Mancini constituted ineffective assistance of counsel that likely deprived the petitioner of an otherwise available substantial ground of defense. Lagassee, 655 A.2d at 329-30.

The central issue in this case, as in many cases involving charges of sexual abuse, was the credibility of the petitioner and the alleged victim. See id. at 330. A witness who could testify about the positive relationship between the petitioner and the alleged victim and a doctor who could testify about the petitioner's shoulder injuries and resulting limitations would have added significantly to the one-witness defense presented.

This petitioner was incarcerated. He and the defense to the charges required the attention of his criminal attorney, not his divorce attorney. Based on this record, on trial counsel's other serious difficulties during his representation of the petitioner, and on this court's presiding over this trial, the court accepts the petitioner's allegation that trial counsel did not know the case because very little time had been devoted to the case. If trial counsel was surprised by the petitioner's withdrawal of his guilty pleas, trial counsel should have moved to continue the trial. An admission that he was unprepared for trial would have been accepted by the court as good cause to postpone the trial, especially because the petitioner agreed to the postponement.

8

## 2. Inconsistent Statements

The introduction of statements from the alleged victim and another child in the house regarding alleged sexual abuse by the defendant of the other child would have been far more prejudicial than probative of credibility based on inconsistent statements. This tactical decision was not manifestly unreasonable. True, 457 A.2d at 796 (counsel's judgment must be shown to be manifestly unreasonable).

## 3. Sheryl Collyer Statement

After the court's ruling at sidebar, trial counsel decided not to inquire regarding Sheryl Collyer's statement to Tammy White. This tactical decision was not manifestly unreasonable. Id.

## 4. Detective Boivin's Interrogation

The petitioner testified about his statements to Detective Boivin and his allegedly confrontational method of interrogation. There is no basis on this record to determine whether questioning Detective Boivin at trial regarding his interrogation method would have been helpful to the defendant.

## 5. Juror #38

There is no evidence on this record that this juror was unable to serve fairly and impartially or that she knew anything about the layout of the defendant's house, as argued by the petitioner. (See, e.g. Jt. Ex. 1 at 9 (juror's "potential awareness of extraneous information."))

## II. Appeal

The petitioner must show that he received ineffective assistance of counsel on appeal and that the outcome of the appeal would likely have been different but for the ineffective assistance. Kimball v. State, 490 A.2d 653, 659 (Me. 1985). Appellate counsel presented adequately the issue regarding juror #38. Credibility issues based on

9

inconsistent statements were not a substantial ground to be argued on appeal and appellate counsel's failure to do so does not constitute ineffective assistance of counsel. See State v. McCurdy, 2002 ME 66, ¶ 10, 795 A.2d 84, 88 (citing State v. Harper, 675 A.2d 495, 497 (Me. 1996)) ("The weight of the evidence and the determinations of witness credibility are the exclusive provinces of the factfinder.")

The entry is

> The Petitioner for Post-Conviction Review is GRANTED with regard to Trial Counsel and DENIED with regard to Appellate Counsel. The case is remanded for further proceedings consistent with this order.

Date: September 25, 2009

Nancy Mills
Justice, Superior Court

10

DENNY M COLLYER
  vs
STATE OF MAINE

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-CR-2008-00096

## DOCKET RECORD

PL. DOB: 03/26/1973
PL. ATTY: DANIEL SKOLNIK
       LAW OFFICE OF DANIEL SKOLNIK
       80 EXCHANGE STREET, SUITE 400
       PORTLAND ME 04101
       PARTIALLY INDIGENT 05/12/2009

State's Attorney: EVERT FOWLE

Filing Document: PETITION
Filing Date: 01/24/2008

Major Case Type: POST CONVICTION REVIEW

## Charge(s)

## Docket Events:

02/01/2008 FILING DOCUMENT -  PETITION FILED ON 01/24/2008

02/01/2008 POST CONVIC. REVIEW -  REVIEW SENT FOR REVIEW ON 02/01/2008

03/20/2008 POST CONVIC. REVIEW -  ASSIGNMENT ASSIGNED TO JUSTICE ON 03/17/2008
      NANCY  MILLS , JUSTICE
03/20/2008 POST CONVIC. REVIEW -  ASSIGNMENT ASSIGNED TO DOCKET ON 03/17/2008

03/20/2008 MOTION -  MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 01/24/2008

03/31/2008 MOTION -  MOTION FOR APPOINTMENT OF CNSL GRANTED ON 03/21/2008
      NANCY  MILLS , JUSTICE
      COPY TO PARTIES/COUNSEL
03/31/2008 Party(s):  DENNY M COLLYER
      ATTORNEY -  APPOINTED ORDERED ON 03/21/2008

      Attorney:  DANIEL SKOLNIK
05/06/2008 SUPPLEMENTAL FILING -  AMENDED PETITION FILED ON 05/05/2008

      DA:  DANIEL SKOLNIK
05/19/2008 POST CONVIC. REVIEW -  RESPONSE TO PETITION FILED ON 05/16/2008

05/19/2008 SUPPLEMENTAL FILING -  AMENDED PETITION FILED ON 05/19/2008

      2ND AMENDED PETITION
05/22/2008 OTHER FILING -  WITNESS & EXHIBIT LIST FILED BY DEFENDANT ON 05/22/2008

06/26/2008 POST CONVIC. REVIEW -  PCR CONFERENCE SCHEDULED FOR 07/09/2008 @ 8:00
      NANCY  MILLS , JUSTICE
06/26/2008 POST CONVIC. REVIEW -  PCR CONFERENCE NOTICE SENT ON 06/25/2008

07/09/2008 POST CONVIC. REVIEW -  PCR CONFERENCE HELD ON 07/09/2008
      NANCY  MILLS , JUSTICE
      Attorney:  DANIEL SKOLNIK
      DA:  PAUL RUCHA
      Defendant Not Present in Court

07/09/2008 POST CONVIC. REVIEW - ORDER RESULTING FROM PCR CONF FILED ON 07/09/2008

07/16/2008 SUPPLEMENTAL FILING - AMENDED PETITION FILED ON 07/16/2008

FOURTH AMENDED PETITION FILED
09/26/2008 OTHER FILING - WITNESS & EXHIBIT LIST FILED BY DEFENDANT ON 09/26/2008

03/12/2009 LETTER - FROM PARTY FILED ON 03/09/2009

Attorney: DANIEL SKOLNIK
RE: DEFT RETAINING MR. SKOLNIK IN TWO CIVIL CASES
03/31/2009 ORDER - COURT ORDER FILED ON 03/31/2009
NANCY MILLS , JUSTICE
THE DEFENDANT WAS INCARCERATED WHEN HE SIGNED HIS INDIGENCY AFFIDAVIT ON 1/15/08 AND
REQUESTED A COUR-APPOINTED ATTORNEY TO ASSIST IN HIS PETITION FOR POST-CONVICTION REVIEW.
THE DEFENDANT IS NO LONGER INCARCERATED AND, ACCORDING TO HIS ATTORNEY'S LETTER TO THE
COURT DATED 3/6/09, THE DEFENDANT HAS RETAINED HIS ATTORNEY FOR TWO CIVIL ACTIONS. THE
DEFENDANT WILL FILE AN JUPDATED AND COMPLETE INDIGENCY AFFIDAVIT WITHIN 10 DAYS OF THE
DATE OF THIS ORDER. THE DEFENDANT WILL ALSO EXPLAIN IN THE AFF
05/06/2009 HEARING - EVIDENTIARY HEARING SCHEDULED FOR 05/27/2009 @ 8:30
NANCY MILLS , JUSTICE
NOTICE TO PARTIES/COUNSEL
05/06/2009 HEARING - EVIDENTIARY HEARING NOTICE SENT ON 05/06/2009

05/13/2009 Party(s): DENNY M COLLYER
ATTORNEY - PARTIALLY INDIGENT ORDERED ON 05/12/2009

Attorney: DANIEL SKOLNIK
05/27/2009 HEARING - EVIDENTIARY HEARING HELD ON 05/27/2009
NANCY MILLS , JUSTICE
Attorney: DANIEL SKOLNIK
DA: PAUL RUCHA
TAPE 1213, INDEX 2113-6334 AND TAPE 1214, INDEX 0-6777          CONT ON 6/3/09
AT 3:30.
05/28/2009 HEARING - EVIDENTIARY HEARING SCHEDULED FOR 06/02/2009 @ 3:30
NANCY MILLS , JUSTICE
NOTICE TO PARTIES/COUNSEL
06/02/2009 HEARING - EVIDENTIARY HEARING HELD ON 06/02/2009
NANCY MILLS , JUSTICE
Attorney: DANIEL SKOLNIK
DA: PAUL RUCHA          Reporter: JANETTE COOK
ALSO PRESENT: WALTER MCKEE, ESQ. WITNESS: HARRY MCKENNEY, CHIEF CIVIL DEPUTY.
EXHIBITS: PETITIONER'S 1.
06/05/2009 OTHER FILING - TRANSCRIPT FILED ON 06/05/2009

FILED BY JANETTE COOK, TRANSCRIPT OF HEARING WITH CIVIL DEPUTY HARRY MCKENNEY
06/12/2009 LETTER - FROM NON-PARTY FILED ON 06/05/2009

S/ MCKEE, ESQ. ATTY MCKEE REPRESENTS DR. MANCINI, REQUESTING NOTICE OF ANY HEARINGS
SCHEDULED AND COPY OF ANY SUMMONSES ISSUED TO DR. MANCINI.
06/29/2009 HEARING - CONFERENCE SCHEDULED FOR 07/02/2009 @ 8:30
NANCY MILLS , JUSTICE
NOTICE TO PARTIES/COUNSEL

06/29/2009 HEARING -  CONFERENCE NOTICE SENT ON 06/29/2009

07/06/2009 AUDIT -  AUDIT REPORT CHART_OF_ACCOUNT EDI ON 07/06/2009 @ 10:32

        RV APPR ABRV:GF; OLD OVERRIDE CODE:NONE; NEW OVERRIDE CODE:NONE; OLD AMT OVERRIDE:0; NEW
        AMT OVERRIDE:0; USER ID:AVIRGIN
08/11/2009 AUDIT -  AUDIT REPORT CHART_OF_ACCOUNT EDI ON 08/11/2009 @ 9:41

        RV APPR ABRV:GF; OLD OVERRIDE CODE:NONE; NEW OVERRIDE CODE:NONE; OLD AMT OVERRIDE:0; NEW
        AMT OVERRIDE:0; USER ID:PMOORE
09/08/2009 AUDIT -  AUDIT REPORT CHART_OF_ACCOUNT EDI ON 09/08/2009 @ 15:16

        RV APPR ABRV:GF; OLD OVERRIDE CODE:NONE; NEW OVERRIDE CODE:NONE; OLD AMT OVERRIDE:0; NEW
        AMT OVERRIDE:0; USER ID:RDIMARCO
09/28/2009 HEARING -  CONFERENCE HELD ON 07/02/2009
        NANCY  MILLS , JUSTICE
        Attorney:  WALTER MCKEE
        DA:  PAUL RUCHA
09/28/2009 FINDING -  GRANTED ENTERED BY COURT ON 09/28/2009
        NANCY  MILLS , JUSTICE

### Receipts
|  |  |  |  |  |
|---|---|---|---|---|
| 06/03/2009 | Attorney Payment | $30.00 | CK | paid. |
| 07/06/2009 | Attorney Payment | $30.00 | CK | paid. |
| 08/11/2009 | Attorney Payment | $30.00 | CK | paid. |
| 09/08/2009 | Attorney Payment | $30.00 | CK | paid. |

A TRUE COPY
ATTEST:  _____
                Clerk